Chief Judge Desmond.
Defendant, because of testimony he gave before a Grand Jury investigating alleged corruption of public officers and employees in Ulster County, was convicted of two crimes of perjury, second degree. One such alleged crime consisted of the giving by defendant on October 2, 1958 of testimony which he afterwards (October 27, 1958) recanted and denied before the same Grand Jury. The first indictment count on which defendant was convicted charged that defendant’s October 2, 1958 Grand Jury testimony was false and, since defendant himself afterwards so labeled it and attempted to purge himself as to it, the trial jury’s finding of his guilt on that count was entirely justified. The second count of the indictment was drawn under sections 1627 and 1627-a of the Penal Law which permit perjury second degree to be proven by the showing of contradictory sworn statements without proof as to which of the statements was true. Since defendant’s evidence given at his second Grand Jury appearance was quite inconsistent with his October 2 statements to that body, the contradictions between the two versions justified the finding of guilt on the second count, also.
The Appellate Division’s reversal of this judgment of conviction and grant of a new trial was ‘ ‘ on the law, the facts being affirmed This form of order necessarily meant that the new trial was being directed not because of any weighing of evidence and not as matter of discretion or in the interest of justice but solely because of an error of law considered by the Appel *241 late Division to require reversal (see People v. Cohen, 5 N Y 2d 282, 292). The alleged error is described and explained in the Appellate Division’s opinion. To it we now turn.
The Appellate Division held that it was reversible error for the Trial Justice to permit an important defense witness (Bareika) to be cross-examined at the trial as to his having previously refused, on the ground that the answers would incriminate him, to answer questions put to him by the State Commissioner of Investigation as to the same matters to which he testified on this trial. The Appellate Division, citing Halperin v. United States (353 U. S. 391), held that the prior exercise by the witness of his undoubted right to refuse to answer could not validly be used at this trial to destroy his credibility, and that such use was, especially because of the importance to the defense of Bareika’s testimony, so serious an error as to require reversal. No one will now question the generality expressed in Halperin v. United States (supra) that a citizen’s assertion of his constitutional right to refuse to incriminate himself cannot afterwards be the basis of an attack on his credibility. But, as we shall show, the demonstration by the People at this trial that witness Bareika had previously made use of the privilege in another investigation of the same matters was, under the circumstances of this trial, proper and justified. Letting this trial jury know that Bareika had earlier declined to answer was proper—indeed, necessary—because the defense itself had made an issue at the trial of Bareika’s willingness to explain these occurrences and had attempted to show by Bareika himself that he had been ready to talk but that the prosecutor, to fob off a complete investigation, had failed to use him as a witness.
Beginning with his opening statement to the jury, defendant’s counsel persistently charged that the prosecution ‘ ' never made any attempt to find out” the true facts. “ He didn’t try and he didn’t want to know ”, said counsel. Defense counsel asked the trial jury in that opening speech whether it did not think that had the Grand Jury and prosecutor been interested in discovering the truth " inquiry would have been made ” from Bareika and others. When it came to presenting the defense, the first witness called for defendant was attorney Bosen who *242 had been retained by defendant and had talked with the prosecutor on defendant’s behalf after the latter’s first, or October 2, Grand Jury appearance. Attorney Eosen’s trial testimony again put before the jury the contention of the defense that the prosecutor, despite suggestions by the attorney, had failed to check the underlying facts with various knowledgeable persons, including this same Bareika. It was in this setting that Barieka himself was called to the stand a little later as a witness for defendant. After preliminary questions had been answered, defense counsel showed by Bareika that he had been subpoenaed to the trial by the prosecution. He was then asked by the defense attorney whether he had “ been available as a witness ”. The prosecutor conceded on the record that Bareika had been served with a subpoena but had not been called as a trial witness. It could not have come as a surprise to anyone that the prosecutor when he began his cross-examination of Bareika asked him: “ Have you always been ready to testify fully and completely about these transactions? ” The People, obviously, were taking the opportunity thus presented to explain why the prosecution had refrained from calling Bareika before the Grand Jury or to the witness stand and to refute the express and repeated defense charge that the prosecutor had, to conceal the truth, kept Bareika out of the case. The witness carefully answered: “ I have been ready to testify in this Court.” Of course he bad — in the sense that he had appeared in response to the subpoena. But that did not decide the issue already tendered to the jury by the defense. The People had a right under the circumstances to show and the trial jury had a right to know that Bareika was no willing witness, eager to tell the whole truth but thwarted by the tactics of the prosecution. The People properly proved by cross-examination of Bareika over strenuous defense objection that, when questioned by the State Commissioner of Investigation (or one of his staff) about these same matters, Bareika had “ some forty or fifty or sixty times ” refused to answer on the ground that his answers would tend to incriminate him.
The defense complains that undue emphasis was put on the matter of Bareika’s former exercise of his privilege by the. allowance of protracted cross-examination of Bareika on this subject. But the issue of Bareika’s alleged willingness to talk *243 and the prosecutor’s refusal to let him had been put prominently into the case by the defense and the issue had to be presented fully to the jury. Defendant had “ opened the door” to the inquiry and the prosecution moved in (People v. Meadows, 136 App. Div. 226, 237, 238, affd. 199 N. Y. 1, 9; People v. Cummins, 209 N. Y. 283, 297). A decision precisely in point is United States v. Sing Kee (250 F. 2d 236, 240, cert, denied 355 U. S. 954). The Sing Kee opinion contains a convincing argument for the correctness of the People’s position here and we should follow it.
Defendant says that the prejudice resulting from the disclosure that Bareika had refused to answer during the earlier investigation was increased by the admission of testimony given by the prosecutor himself that Bareika had been represented at that earlier investigation by an attorney, all of whose clients “refused to testify before the Grand Jury and claimed their immunity.” Under ordinary circumstances, such a statement would have been most improper but in the contest of this trial it was merely a part of the People’s answer to the defense charge of suppression of the available testimony of an allegedly ready and co-operative witness.
Since this reversal was ordered because of this alleged error only, the Appellate Division did not consider other errors alleged by defendant. One only of those other points need be mentioned. Note should be taken of defendant’s argument that the trial court’s charge to the jury was erroneous as depriving him of the benefits of his recantation. The jury was instructed that, even if defendant had sworn falsely on October 2, he would be entitled to an acquittal if the jury believed that after October 2 he “went in before the Grand Jury voluntarily, promptly, and recanted; that his second story was true; that the Grand Jury did not know, was not misled or not deceived, and he did not find out that the Grand Jury did not believe his testimony or was not deceived.” That charge was correct under the leading case, People v. Ezaugi (2 N Y 2d 439).
There may have been some unfairness in allowing defendant to come back before the Grand Jury for recantation purposes and then charging him with perjury as to both occasions, but we see no error of law in it or in the Trial Judge’s treatment of it.
*244 The order should be reversed and the judgment of conviction reinstated.
Judges Dye, Fuld, Frobssel, Van Voorhis and Burke concur; Judge Foster taking no part.
Order reversed and judgment of the Supreme Court, Ulster County, reinstated.