THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH SAPIA, Appellant.

First Department, July 15, 1975

*Irving Anolik* for appellant.

*Robert K. Hood* of counsel *(Peter L. Zimroth* with him on the brief; *Robert M. Morgenthau, District Attorney)*, for respondent.

LANE, J. Joseph Sapia was convicted after a jury trial of criminally selling a dangerous drug in the first degree and criminally selling a dangerous drug in the third degree. The charges arose from two separate transactions: one on June 27, 1973, resulting in the sale by defendant of four ounces of heroin, and the second taking place on July 6, 1973, resulting in the sale by defendant of one kilo of heroin.

The sales were made to an undercover police officer who was closely monitored by his backup team. The closely coordinated police work included the taking of tape recordings and videotaping, which resulted in the submission for the consideration of the jury of a case overwhelmingly proving the guilty participation of the defendant.

Defendant, however, urges that he was prejudiced in the presentation of his case by his inability to call an undercover informant to testify, which inability constitutes reversible error.

The initial contact by undercover Police Officer Hayward was made through Earl Fodderell, who was known to the police as a major narcotics dealer. Fodderell, already under Federal indictment, acted as an agent of the police and arranged for Hayward to meet one Robert Gardner, who ultimately arranged for the meeting with Sapia.

Fodderell's only other connection with the case, as presented to the jury, was his making a telephone call to the defendant to arrange for a new meeting. This was because the initial four-ounce sale was scheduled to be made on June 26. When that meeting was aborted due to defendant's failure to appear on time, a new meeting had to be arranged.

Fodderell, who was in a Federal prison at the time of this trial, had been brought to court as a potential defense witness. He was interviewed in chambers by the Trial Justice without the presence of defense counsel or the District Attorney. The court then expressed its opinion that Fodderell's testimony might be beneficial to the defense. However, Fodderell, who had already been sentenced in Federal court to a 12-year term of imprisonment and had an additional Federal indictment pending, declined to testify unless granted immunity, which immunity the District Attorney refused to confer.

The court then informed the jury that Fodderell was available but that he refused to testify, claiming his constitutional right to remain silent.

Defense counsel attempted to introduce alleged exculpatory statements tending to show a defense of entrapment via an interview held between defendant and his attorney. That interview took place after the narcotics sale but before the arrest. The court properly denied the admissibility of those statements since they clearly were self-serving.

My dissenting brother finds it questionable whether Fodderell can claim Fifth Amendment immunity and, furthermore, whether the failure of the District Attorney to confer immunity warrants reversal of the conviction.

It is to be noted that an agent of a governmental authority, when questioned about occurrences related to his official duty, has the right to claim his Fifth Amendment privilege (*Gard-*

ner v Broderick, 392 US 273; *Spevack v Klein,* 385 US 511; *Malloy v Hogan,* 378 US 1). The right to assert this privilege is, as Mr. Justice BRENNAN stated in *Malloy v Hogan* (378 US 1, 8): "[T]he right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence."

A penalty in the context of that statement means imposition of any sanction which makes assertions of the Fifth Amendment privileges "costly" *(Spevack v Klein,* 385 US 511, 515). Therefore, in the context of the case at bar, Fodderell, though acting as an informer for the police, did not lose his right to claim his Fifth Amendment privilege. Indeed, two immediate reasons for his invoking the privilege come to mind: It is possible that, while Fodderell was performing his duties on behalf of the police, he at the same time, and intertwined in the same transaction, performed acts which were of a criminal nature and which were unauthorized to be performed. He has a right to protect himself against prosecution because of his performance of those acts. In addition, Fodderell had already testified in Federal court regarding this transaction. Defense counsel conceded on the record that the testimony Fodderell would give at the trial was substantially different from the testimony already given in Federal court. He would therefore be exposing himself to a possible perjury indictment which even a grant of transactional immunity, requested by the District Attorney and conferred by the court, could not prevent (CPL 50.30; 50.10, subd 1).

However, the mere right of a witness to assert his Fifth Amendment privilege does not reach the question as to whether defendant was able nonetheless to get a fair trial. We have nothing in the record other than conjecture as to what testimony Fodderell would give had he been granted immunity.

The court, after an *in camera* interview alone with Fodderell, stated: "As to what the testimony would be, I think it would be a fair summary that if believed by the jury, would be exculpatory. Whether or not the testimony would be completely exculpatory if believed by the jury, is by no means clear to me at this point. I am not at all clear the attorneys who have spoken to him, his attorneys, have a sufficiently detailed understanding of all the aspects of it, lead me to form an opinion on that, but there is no question at all it would, at

least in part, be exculpatory, would be material evidence in the case, and evidence that a jury ought to hear."

The court later stated: "I'm not persuaded that if every word he were to say would be believed, it would constitute a complete defense in the case, nor as a factual matter, would avoid a conviction, but it might."

Clearly, the court felt that further probing by defense counsel would reveal the true value of Fodderell's testimony. Such probing by defense counsel took place and they found his statements at the interview to be "wholly inconsistent" with statements he made to the Federal Government.

The defense made no offer of proof which would have clearly delineated the parameters of the testimony to be elicited from Fodderell and would have indicated whether or not there could be an evidentiary articulation of the defense of entrapment.

Despite the fact that the prosecution requested defense counsel to make an offer of proof, none was forthcoming. The court's estimate of the exculpatory nature of the testimony was, as stated by the court, subject to in-depth interview by counsel with greater knowledge of the background facts. Counsel conceded that the gross inconsistency between Fodderell's proposed testimony at trial (which proposed testimony they did not outline) and the statement given in Federal court could well subject Fodderell to a perjury indictment and, on that basis, they rejected calling him unless he were granted immunity.

In view of the overwhelming evidence against defendant and in view of the conjectural nature of the missing testimony, we cannot hold that the failure to grant immunity constituted reversible error.

This is especially true since there was no affirmative duty upon the prosecution to call Fodderell as a witness. He did not participate in the sale itself, nor did he act to identify the defendant (cf. *People v Goggins,* 34 NY2d 163). The People's duty was fulfilled when Fodderell's identity was made known and he was made physically available to the defense *(United States v La Couture,* 495 F2d 1237, cert den 419 US 1053; *People v Goggins, supra).*

The District Attorney expressed no knowledge of exculpatory statements and, absent an offer of proof, could not formulate their validity or for that matter their existence. Absent

knowledge of specific exculpatory material or a specific source of such material, the People have no duty to grant immunity based on speculation and conjecture as a pseudo-fulfillment of the rule prohibiting suppression of "evidence favorable to an accused" (cf. *Brady v Maryland,* 373 US 83, 87).

Accordingly, the judgment of the Supreme Court, New York County, convicting the defendant after jury trial of the crimes of criminal sale of a dangerous drug in the first degree and criminal sale of a dangerous drug in the third degree, should be affirmed.

MURPHY, J. (dissenting). I cannot vote to affirm the instant conviction, carrying with it a prison sentence of 15 years to life, in view of the Trial Judge's candid concession that exculpatory testimony was being withheld from the jury.

Earl Fodderell, reputed to be one of the 10 largest distributors of narcotics in New York City, decided to co-operate with local police officers after pleading guilty to Federal charges; and was eventually "registered" as a confidential informant. Though Fodderell received no money for his subsequent services, the fact of his co-operation was brought to the attention of the sentencing Judge in his Federal case.

Fodderell's disclosures involved defendant Sapia and an individual named Gardner, all of whom shared the same Bronx residence address. Through Gardner, undercover officer Hayward met defendant and, on two separate occasions, purchased from him a substantial sum of narcotics for approximately $40,000.

Defendant's involvement in these sales is undisputed. Aside from the "live" testimony of the undercover officer and his back-up team, tape recordings and videotapes were introduced into evidence clearly establishing defendant's "guilt". My only concern is whether defendant was improperly precluded from establishing a viable entrapment defense.

Although tape recordings of conversations with Fodderell were introduced as evidence-in-chief, he was not called as a prosecution witness. Appellant's contention that the People were required to call Fodderell as a witness in order to permit confrontation and cross-examination is not persuasive. Fodderell's role in the investigation which led to defendant's (and Gardner's) arrest was limited. His information initiated the inquiry; and he introduced the undercover officer to the potential source of drugs. Under the circumstances of this case, I

would agree with respondent that, except to the extent herein-below indicated, its constitutional obligations were met when Fodderell's identity was disclosed.

However, the inability of the defense to obtain Fodderell's testimony presents a much different situation.

Entrapment is an affirmative defense. (Penal Law, § 40.05.) Defendant initially attempted, unsuccessfully, to interpose such defense through the introduction of a pre-arrest (but post-sales) tape recording of a conversation between himself and his attorney in which it was allegedly claimed that Fodderell provided the narcotics sold to the undercover officer and was the recipient of the proceeds of such sales. The Trial Judge ruled this evidence inadmissible and suggested that Fodderell be called as a defense witness. Defense counsel opposed the suggestion; but reconsidered after the court adhered to its ruling on the proffered tape.

Fodderell was interviewed by defense counsel at the Federal House of Detention (where he was serving a 12-year sentence on Federal drug charges, awaiting determination of a resentence application predicated on his police co-operation and disposition of other pending charges). After the interview, he was brought to court with his attorney who stated that his client would invoke his privilege against self incrimination and refuse to answer all material questions unless granted immunity.

After an *in camera* discussion with Fodderell's lawyer, the Trial Judge summarized Fodderell's potential testimony "if believed by the jury, [as] exculpatory"; and declared that he would have granted the witness immunity, in the event the privilege was invoked, if he had the power to do so. The prosecutor, however, despite the court's telephone call to the trial assistant's superior, refused to expressly request the conferring of immunity (CPL 50.30); a decision which "genuinely saddened" the court.

An obviously still disturbed and dissatisfied Trial Justice put Fodderell on the stand, outside the presence of the jury, and asked him to state his position with respect to answering questions concerning his activities in the instant case. Fodderell responded: "Well, my position is that I don't know. I just tried to explain to him, I hope I'll be able to speak freely. *I don't want to see an innocent man go to jail for something he's totally not responsible for.* Then on the other hand, I

don't want to incriminate myself. I don't want to be prosecuted because I'm doing enough time." (Emphasis added.)

Fodderell vacillated between testifying and not testifying, finally deciding not to become a witness; apparently concerned because a statement given in Federal court might expose him to a perjury conviction.

Although it does not conclusively so appear in the record, the Trial Judge clearly indicated that Fodderell's proposed testimony would have been relevant to an entrapment defense. Even under the "subjective" theory of entrapment (depending on whether Sapia had the requisite predisposition to commit the crimes), a factual issue was presented which requires a jury determination. (See *United States v Russell,* 411 US 423.) The District Attorney's speculations to the contrary notwithstanding, we can only conjecture as to the verdict if, for example, it was disclosed that Fodderell gave Sapia the drugs which were then passed on to Hayward and received all of the money paid by the undercover officer.

Equally devoid of merit, in my view, are respondent's surmises as to the heretofore undiscovered crimes possibly committed by Fodderell which will escape prosecution if he is given transactional immunity. (CPL 50.10.) No amount of guesswork should be permitted to deprive a defendant sentenced to a 15-year-to-life prison term of a fair trial. In the circumstances of this case, assuming Fodderell could invoke his Fifth Amendment privilege (which is somewhat questionable since he was co-operating with the police and lacked the criminal intent necessary to commit the instant crimes), the refusal of the prosecutor to request immunity for Fodderell effectively deprived defendant of his Sixth Amendment right to have compulsory process for obtaining witnesses in his behalf. It seems to me that respondent's fear of Fodderell's disclosure of unrelated crimes, thereby obtaining complete absolution, if legally or factually valid, could have been dispelled by appropriate agreement or stipulation framing the questions to be asked and limiting them to these transactions. A right sense of justice required no less.

Additionally, I believe the court's refusal to allow defense counsel to hear a tape recording of defendant's post-indictment interview by the police was prejudicial error.

Defendant was concededly interrogated after arrest and indictment, in the absence of his retained counsel. The interview was for the purported purpose of enlisting his co-opera-

tion in an assertedly unrelated matter. Although the Trial Judge, who heard the tape, concluded that it had no bearing on the instant case, a transcript thereof should have been furnished defense counsel. Though the information disclosed was apparently not used as evidence against defendant *(Massiah v United States,* 377 US 201), any disclosure obtained could have been used to impeach defendant and thus could have had a chilling effect on his option to testify in his own behalf. (Cf. *Harris v New York,* 401 US 222.)

In light of the foregoing, defendant's conviction should be reversed and a new trial directed.

STEVENS, P. J., LUPIANO and NUNEZ, JJ., concur with LANE, J.; MURPHY, J., dissents in an opinion.

Judgment, Supreme Court, New York County rendered on November 14, 1974, affirmed.