Michael Eugene WILLIAMS, Appellant,

v.

STATE of Alaska, Appellee.

No. 4159.

Supreme Court of Alaska.

Oct. 5, 1979.

Richard B. Collins, Collins, Inc., P. C., Anchorage, for appellant.

David Mannheimer, Asst. Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

Michael Williams appeals his jury conviction for robbery, under AS 11.15.240, and the resulting six-year sentence. He and his brother, Dale, were tried jointly for the robbery of an all-night grocery in Anchorage just after midnight on July 27, 1977. The principal issue at trial was the identity of the robbers. The store clerk was able to identify Michael but not Dale. The state also planned to call Gary Prior, who lived with the Williams brothers, because Prior had told the police that he was outside of the store during the robbery and could identify both Michael and Dale. Prior, however, invoked his fifth amendment privilege against self-incrimination[1] and refused to answer any questions at all beyond his name and address, even after being held in contempt for his refusal.[2] Because the trial court knew in advance of Prior's intended refusal to answer questions, the attempted questioning occurred out of the jury's presence.

Ultimately, the jury convicted Michael and acquitted Dale. On appeal, Michael asserts only one error in his trial: the refusal of the judge to allow the jury to see Prior on the witness stand and to hear his fifth amendment invocations.[3] We affirm the trial court.

While no Alaska case has considered this precise issue, the overwhelming weight of authority from other jurisdictions holds that neither party may call a witness when it knows that that witness will refuse to answer questions put to him or her.[4] The reason for the prohibition was well stated in *Bowles v. United States*, 142 U.S.App.D.C. 26, 31–32, 439 F.2d 536, 541–42 (D.C. Cir. 1970), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971) (citation omitted):

> The jury may think it high courtroom drama of probative significance when a witness "takes the Fifth." In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination.

---

1. U.S.Const. Amend. V states: "No person . . . shall be compelled in any criminal case to be a witness against himself." Art. I, sec. 9 of the Constitution of the State of Alaska states in part: "No person shall be compelled in any criminal proceeding to be a witness against himself."

2. Prior, at this time, was under indictment for murder jointly with a third Williams brother, Dennis. Prior's attorney advised him to refuse to answer any questions involving in any way his relationship with the Williams brothers.

3. Williams protested the judge's refusal to put Prior before the jury when he was called by the state, and later in the trial, he tried to call Prior as his own witness.

4. *E. g., United States v. Bowles*, 142 U.S.App. D.C. 26, 439 F.2d 536 (D.C. Cir. 1970) (en banc), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971); *People v. Dikeman*, 555 P.2d 519 (Colo.1976); *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971).

While we can imagine certain cases in which the defendant's constitutional right to call witnesses in his behalf[5] might arguably require that a witness refusing to testify nevertheless be called,[6] this is clearly not such a case. Any inference that the jury might draw from Prior's refusal to testify would be wholly speculative and unsupported by other evidence.[7] Williams claims that he wanted Prior placed before the jury so that the jury could see that Prior fitted the grocery clerk's description of the robber more closely than did Williams. There are other means, however, by which Prior's physical appearance could have been shown to the jury.[8] Williams' assignment of error, therefore, must be denied.

Williams also attacks as excessive his six-year sentence. We may not set that sentence aside unless we find it to be "clearly mistaken."[9] Although Williams was only eighteen, and had a relatively good juvenile record, we cannot find clear error in Judge Ripley's sentence, especially since he specifically imposed no minimum time to be served.[10] Our examination of the judge's sentencing remarks convinces us that he conscientiously considered and applied the *Chaney*[11] criteria. We cannot, in reviewing this case, overlook Williams' unfavorable pre-sentence evaluation, nor the fact that Williams took part in an armed robbery, even if his partner carried the gun.[12]

The judgment of conviction and the sentence are AFFIRMED.

5. U.S.Const. Amend. VI; Alaska Const. art. I, § 11.

6. Thus, for instance, in *Bowles* the defendant was seeking to prove that Smith had committed the charged murder, and had introduced testimony that Smith had admitted the killing. Two dissenting judges believed that the trial court erred in refusing to allow the jury to hear Smith's invocation of the fifth amendment, as they found Smith's silence corroborative of Bowles' other evidence. *Cf. Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (exclusion, on hearsay grounds, of reliable testimony regarding third person's confession violated defendant's sixth amendment rights).

7. The likelihood of unwarranted speculation is especially strong where, as here, the witness's refusal to testify is based on grounds wholly unrelated to the crime charged. *See generally* Alaska R.Evid. 512 (no inference may be drawn from claim of privilege).

8. Photographs of Prior were in fact introduced as evidence by the state. Also, Williams called other witnesses who described Prior's physical appearance. Possibly, Williams could also have had Prior subpoenaed to appear before the jury without testifying.

9. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

10. AS 33.15.080 provides:
 *Granting of parole.* If it appears to the board from a review that a prisoner eligible for parole will, in reasonable probability, live

and remain at liberty without violating the laws, or without violating the conditions imposed by the board, and if the board determines that his release on parole is not incompatible with the welfare of society, the board may authorize the release of the prisoner on parole. However, no prisoner may be released on parole who has not served at least one-third of the period of confinement to which he has been sentenced, or in the case of a life sentence, has not served at least 15 years.
Under AS 33.15.230, a judge in imposing sentence may set a minimum term at the expiration of which the prisoner is eligible for parole, which term shall be at least one-third of the maximum sentence imposed.

11. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

12. *Compare Middleton v. State*, 577 P.2d 1050, 1055–56 (Alaska 1978) (ten-year unsuspended sentence for armed robbery, given to a 22-year-old woman for what was apparently her first violent offense, affirmed); *Benefield v. State*, 559 P.2d 91, 97–99 (Alaska 1977) (fifteen-year sentence, with five suspended, for armed robbery affirmed, in spite of defendant's good work history and character references, and the fact that the robbery was the first serious crime endangering people). We note, however, that Benefield and his co-defendant carried weapons and that a weapon was fired during the course of the robbery.