SINGLETON, Judge.
 

 Joseph Nighswonger was convicted of robbery in the second degree, AS 11.41.510, and sentenced to six years’ imprisonment. He appeals contending that the trial judge erred in ruling that the state could cross-examination his alibi witness on her prior assertion of the fifth amendment privilege. We agree and reverse.
 

 On February 25, 1981, a man robbed Eddie’s Liquor Store on the Old Seward Highway in Anchorage. The store clerk identified Nighswonger as the robber. Ni-ghswonger was subsequently charged with robbery in the second degree. The clerk testified that she recognized Nighswonger as a friend of her stepson. She knew him as “Joe” and knew that he worked at a local car wash. She identified Nighswonger in a photographic lineup and also testified that the robber had been wearing tennis shoes.
 

 Nighswonger waived his right to indictment by grand jury and a preliminary hearing was held before District Court Judge Richard Avery. During the hearing, Kelly Nix, Nighswonger’s nineteen-year-old girlfriend, who was present in the courtroom, was called by the state as a witness although she had not been subpoenaed. Nix and Nighswonger lived together at the time the offense was committed.
 

 When the state’s attorney asked Nix what Nighswonger had told her about the robbery charges, defense counsel objected. Noting Nix’s youth, lack of sophistication
 
 *447
 
 with the law, her involvement with someone charged with a felony, and the fact that she had not been subpoenaed to testify, Judge Avery offered to appoint counsel for Nix. Judge Avery postponed the examination to give Nix time to consult with her attorney because of the risk of making self-incriminating statements.
 

 The following day, the hearing continued with appointed counsel for Nix present. Again, the state’s attorney asked Nix what Nighswonger had told her about the robbery. Her counsel objected, and after consultation, Nix said, “I would like to remain silent and go along with the fifth amendment in this question ... on advice from counsel.”
 

 The state asked Nix if she had seen Ni-ghswonger on February 25, 1981. Nix answered that she had, and the state asked where. Nix’s attorney objected, but she answered simultaneously, “home.” After consultation with her attorney, she said, “I would like to remain silent also.” When the state asked her what kind of vehicle Nighswonger owned, she again invoked the fifth amendment. At this point, the state’s attorney asked for an
 
 in camera
 
 hearing to determine if Nix’s claim of the fifth amendment privilege on this question was valid. Judge Avery denied this request, stating, “I think circumstantially, enough facts, obvious facts, exist here that her taking the fifth is within her privilege and her right to do so, and I’m not going to take it beyond that point.” He based this ruling on Nix’s close relationship with Nighswonger and the fact that they were living together at the time of the crime.
 

 At trial, defense counsel advised the court that he intended to call Nix to testify and moved for a protective order to preclude the state from cross-examining Nix regarding her assertion of the fifth amendment at the preliminary hearing. Judge Moody denied the motion saying that, if Nix testified regarding events on the evening of the robbery, he would allow the state to cross-examine her on those things about which she refused to testify at the preliminary hearing. In light of this ruling, defense counsel decided not to call Nix to testify.
 

 At the close of the evidence and out of the presence of the jury, defense counsel summarized Nix’s proposed testimony. Nix would have testified that she and Nigh-swonger spent the evening of February 25, 1981, at home watching television. Around 11:15 p.m., they left to visit a friend in Mountain View, stopping on Fourth Avenue to look for the friend’s husband, to buy gas, and to speak with Kevin Chudzik. Nix also would have testified that Nighswonger had been wearing white overalls, a blue jacket, a yellow baseball cap, and work boots, and that Nighswonger did not even own a pair of tennis shoes.
 

 The state argues that it was not error for the trial judge to rule that Nix could be cross-examined regarding her prior assertion of the fifth amendment privilege because her invocation of the privilege was inconsistent with her proposed alibi testimony at trial and could therefore be used to impeach her credibility. The state does not dispute the general rule that prohibits any inference to be drawn from a witness’s assertion of the fifth amendment privilege.
 
 See Grunewald v. United States,
 
 353 U.S. 391, 420, 77 S.Ct. 963, 981-82, 1 L.Ed.2d 931, 952 (1957); A.R.E. 512(a), (b). The state contends, however, that there was no factual basis for Nix’s fear of incrimination at the preliminary hearing, making her assertion of the privilege inconsistent with her proposed alibi testimony. We have reviewed the record, and disagree with the state on this point.
 

 Nix’s attorney could have had a number of reasons, consistent with her innocence, for advising her to assert her fifth amendment privilege. When Nix was questioned at the preliminary hearing, her live-in boyfriend, Nighswonger, had been charged with robbery. There was evidence that after the robbery, the robber had left as a passenger in a car. Nix’s attorney could have believed that any admission that she had been with Nighswonger on the evening of the robbery would cause the state to bring charges against her as a co-conspir
 
 *448
 
 ator or an accomplice, even if her explanation of their activities on that evening described innocent behavior. Judge Avery expressed this very concern at the preliminary hearing:
 

 I’m not going to speculate on it. The parties were living together. I don’t know whether the man committed the offense or not. If he did, I don’t know whether it was planned, I don’t know whether she’s a co-conspirator, I don’t have any idea, but I think that the questions that you were beginning to ask and the discussions, if any, he might have had with her about it begin to smack in— within an area that could have made her an accomplice.
 

 Judge Avery noted that Nix was only nineteen years old, unfamiliar with the law, and involved with a man charged with a class B felony. He felt that the questions being asked by the prosecutor constituted “an attempt to make discovery on her” and created a risk that she might say something which could jeopardize her. Under these circumstances, we agree with Judge Avery and conclude that there was adequate foundation for Nix’s claim of the fifth amendment privilege.
 
 [1]
 

 We further find that nothing in the record indicates that Nix’s claim of privilege was inconsistent with her proposed testimony at trial. We conclude that it would be error to allow cross-examination of Nix regarding her assertion of the privilege.
 
 [2]
 
 We also conclude that even if Nix’s assertion of the fifth amendment privilege could be viewed as inconsistent with her testimony at trial, it would be improper to allow cross-examination of Nix on her claim of the privilege because the probative value of such evidence is far outweighed by its prejudicial impact. A.R.E. 403.
 
 See Elson v. State,
 
 659 P.2d 1195 (Alaska, 1983);
 
 Bargas v. State,
 
 489 P.2d 130, 132-33 (Alaska 1971).
 

 Nix’s prior silence at the preliminary hearing has very little probative value because the significance of her claim of privilege is ambiguous. On the other hand, there is a very strong possibility that the jury would impermissibly infer that she was concealing guilty conduct by claiming her constitutional rights. It is precisely because of the inherently prejudicial nature of evidence that a witness has asserted the fifth amendment privilege that courts have refused to allow juries to hear such evidence. As the Supreme Court stated in
 
 Grünewald
 
 “[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances.” 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931, 953.
 
 See Bowles v. United States,
 
 439 F.2d 536 (D.C.Cir.1970),
 
 cert. denied,
 
 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971).
 
 See also Williams v. State,
 
 600 P.2d 1092 (Alaska 1979).
 

 The courts have also recognized the danger that is created when impeachment based upon a witness’ prior silence is allowed in cases in which there is a close relationship between the witness and the defendant. In such instances, it is highly probable that the jury will transfer the inference of guilt from the witness to the defendant.
 
 See People v. Godsey,
 
 74 Ill.2d
 
 *449
 
 64, 23 Ill.Dec. 117, 383 N.E.2d 988, 993 (Ill.1978).
 

 Since we have concluded that the trial judge erred in ruling that cross-examination of Nix concerning her prior silence would be permissible, we must now decide whether such error was harmless. We hold that it was not. In denying the protective order sought by the defense, the trial judge essentially denied Nighswonger the right to call Nix as a witness. This error was not harmless because it deprived Nighswonger of a crucial alibi witness.
 

 The conviction and judgment of the superior court is REVERSED.
 

 [1]
 

 . The state cites
 
 McConkey v. State,
 
 504 P.2d 823 (Alaska 1972), as support for its claim that there was no foundation for Nix’s claim of privilege. We note that in
 
 McConkey,
 
 the court held that the burden on a witness to sustain a claim of privilege “is not great.”
 
 Id.
 
 at 825
 

 [2]
 

 . The state cites a number of cases for the proposition that a witness may be properly cross-examined regarding prior silence in limited circumstances. All those cases, however, involved witnesses who took positions in their subsequent testimony which was blatantly inconsistent with prior silence. For example, cross-examination on prior silence is considered proper where a witness creates the false impression on direct examination that he willingly cooperated with the prosecution or that he gave the same testimony to the prosecution at a prior hearing.
 
 See United States v. Sing Kee,
 
 250 F.2d 236, 240 (2nd Cir.1957),
 
 cert. denied
 
 355 U.S. 954, 78 S.Ct. 538, 2 L.Ed.2d 530 (1958);
 
 People
 
 v.
 
 Ashby,
 
 8 N.Y.2d 238, 203 N.Y.S.2d 854, 168 N.E.2d 672, 675 (N.Y.1960).