OPINION OF THE COURT
 

 Rosenblatt, J.
 

 In this appeal, we consider the extent to which a trial court, at a
 
 Sandoval
 
 hearing, may allow cross-examination of a defendant compatibly with the right against compulsory self-incrimination. Defendant contends that the court should not have permitted the prosecutor to question him about an unrelated crime to which he pleaded guilty but for which he had
 
 *235
 
 not yet been sentenced. We hold that the court did not abuse its discretion in allowing cross-examination limited to defendant’s admissions at the guilty plea allocution.
 

 On August 11, 1996, defendant displayed a gun to three children in a McDonald’s restaurant and robbed them of $70. He pleaded guilty on November 20, 1996 to attempted robbery, admitting under oath that he “took $70 from a kid.”
 

 Before being sentenced, defendant was arrested for another robbery (the one before us) in which he and two accomplices were charged with using a gun to rob a couple of a wallet and gold chain. After indictment, the court conducted a
 
 Sandoval
 
 hearing on June 1, 1998. The People sought permission to cross-examine defendant as to the McDonald’s robbery, for which he was still awaiting sentence. Defendant argued that because of the similarity of the two robberies, any inquiry into the McDonald’s robbery could be prejudicial. He also stated that any reference to the McDonald’s crime would “put[] him in a difficult position to answer questions about that case while this case is in effect. It could certainly be extraordinarily prejudicial not only here but there as well[.]”
 

 The court ruled that if defendant testified, the People could cross-examine him about the McDonald’s robbery only to the extent of asking him “whether on August 11, 1996, he stole money from a kid, and whether he admitted that in court on November 20th, 1996.” The court precluded any reference to defendant’s possession and display of a gun.
 

 Defendant did not testify. He was convicted, and the Appellate Division affirmed. A Judge of this Court granted defendant leave to appeal, and we now affirm.
 

 Defendant contends that the trial court’s
 
 Sandoval
 
 ruling constituted reversible error. Citing
 
 People v Betts
 
 (70 NY2d 289 [1987]) and
 
 Mitchell v United States
 
 (526 US 314 [1999]), he now argues that the trial court should have barred all cross-examination as to the McDonald’s robbery because any such questioning left him exposed to the possibility of self-incrimination should his McDonald’s guilty plea ever be vacated. We are unpersuaded.
 

 In
 
 Betts,
 
 this Court held that defendants who testify do not waive their self-incrimination rights with respect to “pending” unrelated criminal charges
 
 (see
 
 70 NY2d, at 292, 295). Betts was on trial for first degree rape and sought to prohibit the prosecutor from questioning him about a burglary for which he was charged and awaiting trial. Betts argued that the proposed
 
 *236
 
 inquiry would impair his right not to incriminate himself. Betts told the court that if he were cross-examined about the burglary, he would have to invoke his privilege against self-incrimination and thus lose favor with the jury. Agreeing with his argument, this Court held it improper to force Betts to answer questions and possibly incriminate himself in connection with the unrelated pending burglary charge.
 

 Seizing on the word “pending,” defendant argues that because he had not yet been sentenced for the McDonald’s robbery it was “pending” at the time of the
 
 Sandoval
 
 hearing, and that his self-incrimination argument should therefore prevail under the
 
 Betts
 
 rationale. He reads
 
 Betts
 
 too broadly. Unlike Betts, who was facing trial, defendant had pleaded guilty to the earlier crime. In open court he waived his Fifth Amendment rights in connection with the McDonald’s robbery, admitting that he stole the money. When the court made its
 
 Sandoval
 
 ruling in the case before us, defendant’s guilty plea in the McDonald’s robbery was undisturbed and unchallenged, as it had been for 18 months.
 

 Defendant has never suggested that he thought the guilty plea the least bit vulnerable or that there was any ground upon which it should or could be vacated. Never did he seek to withdraw the plea or indicate that he had even the remotest hope or intention of doing so. Moreover, at no time did defendant tell the trial court that he was concerned with the prospect of self-incrimination, never even using the phrase or any of its equivalents. Fleetingly and in conclusory language, the defense spoke of “extraor dinar [y] prejudic[e]” and being in a “difficult position,” but did not explain how or why any such prejudice or difficulty would ever materialize.
 

 Had defendant addressed the prospect of a withdrawal or vacatur of the McDonald’s guilty plea, the trial court would have been able to deal with a possible self-incrimination claim and rule accordingly.
 
 *
 
 Only the Judge mentioned self-incrimination, explaining that he would allow the prosecution
 
 *237
 
 to cross-examine defendant about the McDonald’s crime only as to whether defendant stole money from a kid and admitted it in court on November 20, 1996. Defendant then directed his argument exclusively toward the prejudicial impact of propensity evidence.
 

 The trial court was careful to enjoin the prosecutor from asking defendant anything beyond the words of his guilty plea. By meticulously limiting the inquiry as it did, the trial court foreclosed any incriminating inquiry as to the McDonald’s crime, save what defendant himself said when he relinquished his Fifth Amendment rights during the plea colloquy. Defendant offers no basis to conclude that his guilty plea was assailable or that surrendering his Fifth Amendment rights was anything but knowing and voluntary.
 

 Mitchell
 
 does not help defendant. There, the petitioner pleaded guilty to conspiring to distribute cocaine, admitting to having done “some of’ the conduct of which she was accused (526 US,
 
 supra,
 
 at 318). At trial, the court advised her that the drug quantity — on which the range of punishment depended— would be determined at a sentencing hearing. Informing the petitioner of the possible penalty, the court told her that the range of punishment is “very complex” and depended on what the prosecution would be able to establish as to her involvement
 
 (id.,
 
 at 317). At the sentencing hearing, the court heard witnesses as to her more serious involvement and then imposed sentence, drawing an adverse inference from the petitioner’s failure to rebut the testimony of others at the hearing
 
 (see, id.,
 
 at 319).
 

 Under a sentencing scheme of that type (where proof following a guilty plea is part of the sentencing procedure and the defendant’s further testimony is expected if not demanded), the prospect of self-incrimination is manifest. In those circumstances, the prospect of incrimination was not over until sentence was imposed. In the case before us, however, there was no basis for defendant to fear or expect a sentencing hearing at which proof would be taken or that he would be called upon to incriminate himself beyond what he admitted at the plea allocution. He certainly expressed no such concern to the court. His present arguments regarding self-incrimination are therefore theoretical and unavailing.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 
 *238
 
 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed.
 

 *
 

 The parties have disagreed over whether and to what extent
 
 People v Spitaleri
 
 (9 NY2d 168 [1961]) would bar the prosecution from using the admission if the guilty plea were ever vacated. In
 
 Spitaleri,
 
 we held that the People could not introduce evidence of a defendant’s withdrawn guilty plea to the crime for which he was then being tried. We later emphasized that
 
 Spitaleri
 
 was “in no way constitutionally or statutorily compelled,” but was based on “fairness”
 
 (People v Evans,
 
 58 NY2d 14, 22, 24 [1982]). Because the issue is not before us, we do not decide whether
 
 Spitaleri
 
 should be extended to cover the use of an admission made in another trial or whether there are
 
 *237
 
 any conceivable circumstances in which the prosecution could use such an admission.