OPINION OF THE COURT
Martin Marcus, J.
The question arose in the trial of this matter whether a witness who had previously pleaded guilty to the commission of a *650 crime, admitted his guilt in his plea allocution, been sentenced and waived his right to appeal, could nonetheless refuse to testify at the trial of another person charged with the same crime because the testimony he intended to give would contradict his plea allocution and subject him to a charge that the testimony was perjurious. For the reasons set forth more fully below, I determined that the witness could not refuse to testify on that ground and directed him to testify.
Two indictments, the first charging the defendant alone with the commission of one robbery, and a second charging him and two codefendants, Brihean Miller and Joseph Luna, with a different robbery, were consolidated for trial after Miller and Luna pleaded guilty to the robbery with which they and the defendant were charged. In the trial of the consolidated indictments, the prosecutor sought to call Miller as a witness, relying on the unsworn plea allocution Miller had given.to the judge who accepted his guilty plea, in which Miller said that he, Luna and the defendant had committed the robbery. When Miller was produced to testify at the defendant’s trial, however, his attorney represented to the court and to the parties that, if Miller testified, Miller would say that while he and Luna had committed the robbery, the defendant had not. Given the victim’s identification of the defendant as one of the robbers, and his own plea allocution corroborating that identification, Miller’s attorney noted that if Miller testified to the contrary, he would be subject to prosecution for perjury. On that basis, when Miller was called to the stand outside the presence of the jury, he asserted his privilege against self-incrimination and refused to testify.
Despite being warned by Miller’s attorney that Miller would exculpate the defendant if he testified, the People insisted that if the court determined that Miller’s assertion of the privilege was invalid, they still intended to call him as a witness. The People also argued that if the court determined that Miller’s assertion of the privilege was valid, then he was unavailable as a witness, and they should be permitted to place his plea allocution in evidence before the jury as a statement against penal interest. (See People v Thomas, 68 NY2d 194 [1986]; People v Settles, 46 NY2d 154 [1978] [unavailability of declarant required for admission of statement against penal interest].) Although opposing the admission of the plea allocu *651 tion, the defendant took no position on the validity of Miller’s assertion of the privilege and his availability as a witness.[1]
Generally, “the witness is, at least in the first instance, the sole arbiter of the applicability of the constitutional privilege [against self-incrimination] to his own situation.” (People v Thomas, 51 NY2d 466, 472 [1980] [citations omitted]; see also People v Arroyo, 46 NY2d 928, 930 [1979] [noting that “the general rule” is “that the witness is the judge of his right to invoke the privilege”] [citations omitted].) However, “the privilege’s protection extends only to witnesses who have ‘reasonable cause to apprehend danger from a direct answer,’ ” and whether such reasonable cause exists is an “inquiry * * * for the court; the witness’ assertion does not by itself establish the risk of incrimination.” (Ohio v Reiner, 532 US 17, 21 [2001], quoting Hoffman v United States, 341 US 479, 486 [1951];[2] see also People ex rel. Taylor v Forbes, 143 NY 219, 231 [1894] [a witness may be “compelled to answer when * * * it is perfectly clear and plain that he is mistaken, and that the answer cannot possibly injure him, or tend in any degree to subject him to the peril of prosecution”]; State of New York v Carey Resources, 97 AD2d 508, 509 [2d Dept 1983] [where “the danger of incrimination is not readily apparent, the witness may be required to establish a factual predicate”].)
In People v Brady (97 NY2d 233 [2002]), the People requested in a Sandoval hearing permission to question the defendant at trial about a crime to which he had pleaded guilty, but for which he had not yet been sentenced. Observing that the defendant “ha[d] never suggested that he thought the guilty plea the least bit vulnerable or that there was any ground upon which it should or could be vacated,” and noting that the defendant had never sought “to withdraw the plea or indicate [d] that he had even the remotest hope or intention of doing so” (97 NY2d at 236), the Court of Appeals held that the defendant *652 had waived his Fifth Amendment right not to be cross-examined about his plea and about the statements he made in the plea allocution. In this case, Miller had not only entered his plea of guilty, but had already been sentenced, waived his right to appeal, and affirmatively indicated that he did not intend to file an appeal. Under these circumstances, even more clearly than the defendant in Brady, Miller had waived his right against self-incrimination relating to the robbery, and could not — and did not — refuse to testify on the ground that his testimony would incriminate him in the commission of that crime.[3]
Miller’s self-incrimination claim related not to the robbery, but to the statement Miller made in his guilty plea allocution that the defendant had participated in the robbery with him, a statement which, at the defendant’s trial, Miller’s attorney contended was false. Of course, if Miller testified at the trial that the defendant had not participated in the robbery, Miller could not be prosecuted for falsely stating in the plea allocution that the defendant had done so, since that statement was not under oath. (See Penal Law § 210.00 [5] [“A person ‘swears falsely’ when he intentionally makes a false statement * * * while giving testimony’]; § 210.00 [3] [“‘Testimony’ means an oral statement made under oath in a proceeding before any court * * * ”].) Miller also could not be prosecuted for perjury proven by inconsistent statements, since in such a prosecution — in which a person may be convicted of perjury based solely, upon the “irreconcilable inconsistency” of two statements, without the prosecution having to allege or prove which one was false — both of the statements must be under oath. (See Penal Law § 210.20; see also People v Ashby, 8 NY2d 238 [1960]; People v Palmer, 235 AD2d 577 [3d Dept 1997].)
If, however, Miller testified at the defendant’s trial, he could be charged with falsely testifying there that the defendant had *653 not committed the robbery. The possibility of such a prosecution was not merely hypothetical, since there was legally sufficient evidence to support it: the account of the complaining witness, who had already identified the defendant at trial as one of the robbers, and Miller’s statement in the plea allocution, which would corroborate the identification of the defendant by the complaining witness. (Penal Law § 210.50 [“In any prosecution for perjury, * * * falsity of a statement may not be established by the uncorroborated testimony of a single witness”]; see People v Rosner, 67 NY2d 290 [1986]; People v Gottfried, 61 NY2d 617 [1983].)
Noting the possibility of such a prosecution, Miller’s attorney claimed that he could refuse to testify on the ground that, if he did so, he would be subject to prosecution for the testimony he would give.[4] In support of that proposition, Miller cited People v Sapia (41 NY2d 160 [1976]) and People v Shapiro (50 NY2d 747 [1980]). In Sapia, the Court of Appeals held that a witness had properly asserted a Fifth Amendment right to refuse to testify based on a possible perjury charge, stating that there was “substance to the argument that [the witness’] proposed testimony would have been so inconsistent with prior statements he had made to Federal authorities as to expose him to conviction for perjury.” (41 NY2d at 164.) And in Shapiro, the Court of Appeals cited Sapia in observing that “ordinarily, exposure, whether to perjury or other criminal charges, is a sufficient basis for a witness’ invocation of the privilege against self incrimination.” (50 NY2d 759-760.) Moreover, in People v Bagby (65 NY2d 410, 413 [1985]), the Court of Appeals recognized a witness’ right to refuse to testify based on the prosecutor’s threat that, if she gave testimony materially different from sworn statements she had already made, “there [was] a good likelihood of perjury prosecution.”
However, in each of these cases — Sapia, Shapiro and Bagby — the witness whose Fifth Amendment right was in issue had made prior statements under oath, and would therefore have been subject to prosecution for perjury committed not only in the testimony the witness was being called upon to give, but in one or more sworn statements the witness had al *654 ready made.[5] None of these cases stands for the proposition that a witness has the right to refuse to testify on the ground that the witness may be prosecuted for perjury in the testimony he or she is seeking to avoid giving. Significantly, in Bagby, the Court of Appeals clarified the language used in Sapia by citing that case for the proposition that a “witness may claim the privilege based upon the fact that the proposed testimony would be so inconsistent with prior statements under oath as to expose him to conviction for perjury.” (65 NY2d at 413-414 [emphasis added].) Extending the reach of these cases to witnesses who had made prior unsworn statements is neither necessary nor reasonable.
As the Supreme Court long ago held, “the constitutional guaranty of the 5th Amendment does not deprive the lawmaking authority of the power to compel the giving of testimony, even [though] the testimony, when given, might serve to incriminate the one testifying, provided immunity be accorded * * * in all respects commensurate with the protection guaranteed by the constitutional limitation.” (Glickstein v United States, 222 US 139, 141 [1911]; see also Kastigar v United States, 406 US 441 [1972].) The New York Legislature exercised this power by enacting CPL 50.20, which provides that “a [person who] * * * refuse [s] to give evidence requested of him on the ground that [the testimony] may tend to incriminate him” (CPL 50.20 [1]) may nonetheless be compelled to give that evidence if he receives immunity from a “competent authority.”[6] (CPL 50.20 [2] [a], [b].) A person who testifies in a legal proceeding with the transactional immunity granted pursuant to CPL 50.10 (2) “cannot * * * be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein,” but “may nevertheless be convicted of perjury as a result of having given false testimony in [the] legal proceeding [in which he is an immunized witness].” (CPL 50.10 [1]; see People v Gottfried, 61 NY2d 617 [1983]; Matter of Rush v Mordue, 68 NY2d 348, 357 [1986].)
*655 Given this “limitation” on statutory immunity, if a witness’ privilege against compulsory self-incrimination reached so far as to protect against the possibility that the witness might be prosecuted for perjury in the testimony the witness intended to give, a court’s ability to compel the testimony of a witness immunized pursuant to CPL 50.20 would be nullified whenever the witness had made a prior unsworn statement — whether in a plea allocution to a judge, in an interview with a prosecutor, police officer or private investigator, or with any other person— and expressed an intention to give testimony inconsistent with that prior statement. Even in the absence of such a prior contradictory statement, a witness might assert this Fifth Amendment privilege merely because the testimony the witness intended to give was inconsistent with the account of other witnesses, or with other evidence available to the prosecution.
Thus, if the Fifth Amendment claim Miller raised in this case were valid, a witness who raised the specter of such a perjury prosecution could be compelled to testify only if the witness received, in addition to the immunity provided by CPL 50.20 (2), immunity against prosecution for peijury committed in the testimony the witness gave thereafter. Such immunity is not constitutionally required, however, since, as both the Supreme Court and the New York Court of Appeals have concluded, “the immunity afforded by the constitutional guaranty relates to the past, and does not endow the person who testifies wit]i a license to commit perjury.” (Glickstein v United States, 222 US 139, 142 [1911], quoted in People v Tomasello, 21 NY2d 143, 149 [1967].) This conclusion, “so often repeated * * * as to be firmly established constitutional law” (United States v Apfelbaum, 445 US 115, 127 [1980]), achieves a sensible result, since “it cannot be conceived that there is power to compel the giving of testimony where no right exists to require that the testimony shall be given under such circumstances and safeguards as to compel it to be truthful.” (People v Tomasello, 21 NY2d at 149.)
In Apfelbaum, the defendant testified before a grand jury after receiving use immunity pursuant to 18 USC § 6002, which provides that a witness who refuses to testify on the basis of his or her Fifth Amendment privilege may be compelled to give testimony in a proceeding, “but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise *656 failing to comply with the order.” When the defendant was, in fact, charged with committing perjury before the grand jury, he claimed that the Fifth Amendment precluded the prosecution from using at the trial the truthful portions of his immunized grand jury testimony in establishing that other portions were intentionally false. In rejecting that claim, the Court followed Glickstein and other cases holding that the Fifth Amendment does not protect a witness against compulsory self-incrimination relating to future conduct, and reasoned that “at the time [the witness] was granted immunity, the privilege would not have protected him against false testimony that he later might decide to give.” (445 US at 130.) Because here, too, the Fifth Amendment did not permit Miller to claim a privilege against self-incrimination based on the fear of prosecution for committing perjury in testimony he had not yet given, I determined that Miller could not validly assert the privilege and directed him to testify.[7]

. The People also insisted that the plea allocution need not be redacted to excise from it Miller’s statement that the defendant had participated in the robbery. The defendant insisted that the redaction was necessary. (See People v Thomas, supra, 68 NY2d at 200-201.) Because I found that Miller was available as a witness at the trial, I did not reach this question.

. “[Tjhis privilege extends not only ‘to answers that would in themselves support a conviction * * * but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant’ * * * ‘[I]t need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.’ ” (Ohio v Reiner, 532 US at 20-21, quoting United States v Hoffman, 341 US at 486-487.)

. In People v Sobotker (61 NY2d 44, 48 [1984]), the Court of Appeals held that a defendant who was on trial in one case, and who had pleaded guilty but had not yet been sentenced on another, could assert a Fifth Amendment privilege not to be questioned about the crime for which he was awaiting sentence because of the danger that the defendant’s testimony at the trial could be offered against him when he was sentenced on his guilty plea. (See also People v Delgado, 287 AD2d 327 [1st Dept 2001].) In Brady, the trial court avoided this danger by “enjoin[ing] the prosecutor from asking defendant anything beyond the words of his guilty plea,” thus “foreclosing] any incriminating inquiry * * * , save what defendant himself said when he relinquished his Fifth Amendment rights during the plea colloquy.” (97 NY2d 237.) In this case, no such precaution was necessary because Miller had already been sentenced.

. The fact that Miller’s attorney claimed that the testimony Miller intended to give and for which he might be charged with perjury was, in fact, truthful did not affect the validity of his assertion of the privilege, since the privilege is available to those who claim innocence, as well as to those who do not. (See Ohio v Reiner, 532 US 17 [2001]; Grunewald v United States, 353 US 391 [1957].)

. Although in Sapia the Court of Appeals made reference only to “prior statements [the witness] had made to Federal authorities as to expose him to conviction for perjury” (41 NY2d at 164), it is clear from the decision below that those statements were given in sworn testimony in federal court (People v Sapia, 48 AD2d 524 [1st Dept 1975]).

. Pursuant to CPL 50.30, “the court is a competent authority to confer immunity in accordance with the provisions of section 50.20, but only when expressly requested by the district attorney to do so.”

. After this decision was rendered, Miller was, in fact, called as a witness by the People at trial, and he testified, as he had indicated through his attorney that he would, that the defendant had not participated in the robbery. The jury concluded otherwise, and convicted the defendant of, inter alia, robbery in the first and second degrees.